JJD:CMM
F. #2019R00720

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 17 2019 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

VALERIE CINCINELLI,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT

(18 U.S.C. §§ 1958(a) and 2)   19mj474

EASTERN DISTRICT OF NEW YORK, SS:

BRYAN GEE, being duly sworn, deposes and states that he is a Special Agent

with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

In or about and between February 2019 and the present, within the Eastern

District of New York and elsewhere, the defendant VALERIE CINCINELLI, together with

others, did knowingly and intentionally attempt to travel or cause another to travel in

interstate commerce, to wit: from New York to New Jersey, and use and cause another to use

one or more facilities of interstate commerce, to wit: one or more cellular telephones, with

intent that one or more murders be committed in violation of New York State Penal Law

Section 125.25, to wit: the murders of John Doe and Jane Doe, individuals whose identities

are known to law enforcement, as consideration for the receipt of, and as consideration for a

promise and agreement to pay, something of pecuniary value.

(Title 18, United States Code, Sections 1958(a) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been for approximately two years.   I am currently assigned to a violent crimes squad of the Long Island Office of the FBI.   I have been involved in numerous criminal investigations and prosecutions of cases involving violent crimes.   Through my training, education and experience, I have become familiar with activities and efforts of persons involved in such activity to avoid detection by law enforcement.   I am familiar with the facts and circumstances set forth below from my participation in the investigation, which includes, but is not limited to, my review of the investigative file, audio recordings, bank and telephone records, and conversations with other law enforcement officers involved in the investigation and review of law enforcement reports.

2.      An investigation by the FBI has revealed that between approximately February 2019 and the present, the defendant VALERIE CINCINELLI has attempted to travel or caused another to travel in interstate commerce from New York to New Jersey, and used and caused another to use interstate commerce facilities with intent to commit multiple acts of violence, specifically the murders of John Doe and Jane Doe.   From approximately 2007 to the present, CINCINELLI has served as a Police Officer with the New York City Police Department ("NYPD").

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3.    A confidential source ("CS")[2] has advised the FBI of the following, in sum, substance and in part:   The defendant VALERIE CINCINELLI requested that the CS hire a hitman to murder John Doe, CINCINELLI's estranged husband, and Jane Doe, the CS's minor daughter.   The CS told CINCINELLI that the CS knew someone who would do it for $7,000.   On or about February 18, 2019, CINCINELLI made a cash withdrawal of $7,000 from a TD Bank branch in Wantagh, New York and bank records confirm the cash withdrawal.   CINCINCELLI gave $7,000 in cash to the CS to give to the hitman.   The CS informed CINCINCELLI that the CS would convert the $7,000 cash to gold coins and pay the hitman in gold coins.   Records obtained from a coin dealership in Massapequa Park, New York confirm that, later that same day, the CS purchased five ounces of gold coins for $6,935.

4.    Between February 2019 and the present, the defendant VALERIE CINCINELLI and the CS discussed the murder-for-hire plot both in person, as well as in communications over cellular telephones, some of which conversations were consensually recorded at the direction of law enforcement.   During those conversations CINCINELLI explained, in sum and substance, that she wanted John Doe and Jane Doe murdered.

5.    On or about May 8, 2019, at around 7:56 p.m., during an in-person conversation between the defendant VALERIE CINCINELLI and the CS, which was consensually recorded at the direction of law enforcement, the CS informed CINCINELLI that an alleged hitman was going to carry out the murders of John Doe and Jane Doe the upcoming weekend.   When the CS expressed concern over the murders of John Doe and

---

[2]    The CS has proven reliable; information provided by the CS has been corroborated by other evidence, including bank and phone records, and audio recordings.

Jane Doe happening over the same weekend, CINCINELLI told the CS to have the hitman kill Jane Doe over the weekend and then wait a week or a month to kill John Doe. CINCINELLI also told the CS that the CS should not worry because John Doe would be murdered in one location and Jane Doe would be murdered in a separate location. CINCINELLI and the CS discussed where Jane Doe was located and CINCINELLI stated that Jane Doe is often in New Jersey.   CINCINELLI stated that Jane Doe was in New Jersey during the week and in New York on the weekends.   During the conversation, CINCINELLI, using a cellular telephone, checked Jane Doe's social media to find out where Jane Doe was located.   CINCINELLI further stated that, if questioned about the murders, she would have nothing to worry about because she would be at home at the time of the murders.   CINCINELLI also questioned the CS why the CS could not carry out the murders him/herself.

6.      On or about May 13, 2019, at around 2:50 p.m., during an in-person conversation between the defendant VALERIE CINCINELLI and the CS, which was consensually recorded at the direction of law enforcement, CINCINELLI and the CS continued to discuss plans to have John Doe and Jane Doe murdered.   The CS informed CINCINELLI that the alleged hitman was at John Doe's place of work and asked CINCINELLI what kind of car John Doe drove.   In response, CINCINELLI provided the CS with the make, model and color of the vehicle so that the CS could give that information to the hitman.   CINCINELLI and the CS discussed that the hitman would kill John Doe near John Doe's place of work in Holtsville, New York.   CINCINELLI stated that it would not look suspicious because the murder would take place in "the hood" or "the ghetto."   The CS also informed CINCINELLI that the alleged hitman had located Jane Doe in New Jersey.

CINCINELLI responded "why wasn't it done if there's no problem?"  The CS stated that the hitman would not carry out the murder near a school and CINCINELLI responded "Ok, so she leaves school, you said he knows exactly where she lives, right? . . . So what's the problem."  During the conversation, CINCINELLI, using a cellular telephone, checked Jane Doe's social media to find out where Jane Doe was located.  CINCINELLI stated that, according to her social media post, Jane Doe was in Warwick, New York.[3]

7.    On or about May 13, 2019, at around 3:55 p.m., during an in-person conversation between the defendant CINCINELLI and the CS, which was consensually recorded at the direction of law enforcement, CINCINELLI and the CS continued to discuss plans to have John Doe and Jane Doe murdered.  The CS told CINCINELLI that the CS spoke to the alleged hitman again and that the hitman wanted an additional $3,000.  CINCINELLI asked how the alleged hitman was going to carry out the murders.  CINCINELLI and the CS discussed what their respective alibis would be if questioned by the police.  CINCINELLI again stated that she would be at home at the time of the murders and, if the CS was with her, she would say that he was at the house.  CINCINELLI asked how the hitman was going to inform the CS that the murders had been carried out.  CINCINELLI then proceeded to discuss possible scenarios for carrying out the murders.  With respect to John Doe, CINCINELLI stated that John Doe sells fireworks and that it could look like he was killed over the money John Doe had on his person as a result of selling fireworks.  With respect to Jane Doe, when the CS stated that the hitman did not want to carry out the murder near a school, CINCINELLI responded "[r]un her the fuck over, how about that."

---

[3]    Warwick, New York is approximately five miles from the border of New Jersey.

8.     As set forth above, the defendant VALERIE CINCINELLI believed that, during the week, Jane Doe resided in New Jersey.   The CS reported that, in order for CINCINELLI to try to find out Jane Doe's location, CINCINELLI directed the CS to call different schools on speaker phone and told the CS to ask if Jane Doe was at school that day. In addition, as set forth above, CINCINELLI used her cellular telephone to track Jane Doe on social media to determine her location.

9.     A review of the CS's cellular telephone and text messages between the CS and the defendant VALERIE CINCINELLI confirms that the CS and CINCINELLI communicated using cellular telephones multiple times between approximately February 2019 and the present in furtherance of this murder-for-hire plot, some of which calls and texts were made to or from Oceanside, New York.

10.     On May 17, 2019, at approximately 10:10 a.m., at the direction of FBI agents, the defendant VALERIE CINCINELLI was notified by a Suffolk County Police Department ("SCPD") Detective that the SCPD was investigating the death of John Doe. Following the death notification, during an in-person conversation between CINCINELLI and the CS, which was consensually recorded at the direction of law enforcement, CINCINELLI discussed what her alibi would be if she were to be questioned by the police about the death of her estranged husband.

11.     On May 17, 2019, at approximately 10:48 a.m., FBI agents sent a text message to the CS purportedly from the hitman, which included a photograph of the alleged murder scene.   The CS showed CINCINELLI the text message and photograph from the purported hitman.   In response, the defendant VALERIE CINCINELLI instructed the CS that they needed to delete text messages and photographs from their respective cell phones.

WHEREFORE, your deponent respectfully requests that the defendant

VALERIE CINCINELLI be dealt with according to law.

BRYAN GEE
Special Agent, Federal Bureau of Investigation

Sworn to before me this
17th day of May, 2019

/S/ Anne Y. Shields

THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK