# JAMES KOUSOUROS
*ATTORNEY AT LAW*

JAMES KOUSOUROS
FOUNDER & PRINCIPAL

260 Madison Avenue, 22nd floor • New York, NY 10016
212•532•1934 / 212•532•1939 fax
E-mail: James@kousouroslaw.com

RIKI GHOSH
SENIOR ASSOCIATE

EMMA J. COLE
LEGAL ASSISTANT

June 24, 2019

**Via ECF**
Honorable Sandra F. Feuerstein
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:   **United States v. Valerie Cincinelli**, 19-CR-245 (SJF)

Dear Judge Feuerstein:

We respectfully submit this letter in response to the government's submission dated June 21, 2019 in which the government amplified its argument for the continued detention of Ms. Cincinelli. Accompanying its letter, the government attached text messages referred to during the detention hearing and internet searches found on Ms. Cincinelli's phone. We submit that these text messages do not support pre-trial detention and, in fact, plainly rebut many of the government's contentions.

With regard to the text messages, the government contends that they reflect Ms. Cincinelli's animus towards the minor victim in this case. This purported victim is the daughter of Ms. Cincinelli's then boyfriend, John Dirubba, who taped the conversations relating to the alleged murder for hire plot. In fact, these text messages reflect Ms. Cincinelli's frustration with the boyfriend, not with his daughter. Ms. Cincinelli believed that Dirubba, who had borrowed and stolen money from her in the past was spending her money on his daughter. As an example, in blocks 8710 and 8709,[1] Ms. Cincinelli is asking about her money being spent on the minor while Dirubba is claiming he has no money. Ms. Cincinelli persists in her accusations by referring to images she had seen of the minor with expensive bags and other items she suspected Dirubba purchased for her. These same texts also illustrate why Ms. Cincinelli looked at the minor's social media posts. Contrary to the government's interpretation, Ms. Cincinelli was not looking at the minor's posts to determine her whereabouts, but instead to find evidence of Dirubba's deceit. And she believed that she found it in the images she referred to.[2]

What the government has not pointed out for this Court is that the only person expressing animus – indeed fatal animus – towards the minor victim is her own father. While Ms. Cincinelli is simply confronting Dirubba with what appear to be pricey expenditures for his daughter with

---

[1] As the government noted in its submission, the texts should be read from the last page forward as the print out begins with the last message in time.
[2] We further note that posts on Instagram are not necessarily in real time. Most often people will post photographs taken earlier. These photographs obviously do reflect new shoes, handbags, expensive manicures, etc.

money she believed he had taken from her, it is Dirubba who expresses the true animus. For example, in blocks 8587 and 8586, Dirubba wrote "Oh you want to keep doing is bringing this c…. to my face" and "I have nothing to do with them that's it". He then admits having taken $15,000.00 from Ms. Cincinelli (block 8584). In block 8576, referring to his wife and daughter, Dirubba wrote "I don't care what's on the internet I'm not paying for nothing I don't see nobody I don't care if they're f….. dead". Ten seconds after that he wrote "I don't give a f… what they do" (block 8573). Ms. Cincinelli then reminded Dirubba of how he had lied to her before. Dirubba admitted this and stated "yes but I'm not doing anything wrong now" (block 8566) and "I'm going to tell you one more time" "I don't give a f… if they're f…ing dead" (blocks 8562 and 8560).[3] Surely the government will assert that Dirubba didn't mean to call his fifteen year old child such names or that he didn't care if his own flesh and blood and the mother of his child were dead and that these are only words – he was just saying things. Regardless of the explanation, with respect to Ms. Cincinelli, these texts show nothing more than a woman venting her frustration at Dirubba's repeated lying regarding her money and where it was spent. It is Dirubba who utters words of hatred and death.

The government has also contended in the complaint that it was in late February, 2019 that Ms. Cincinelli gave Dirubba $7,000.00 which he later converted to gold coins to pay his hitman. However, the texts categorically support our contention that Ms. Cincinelli never paid Dirubba $7,000.00 for a hitman, but rather lent him $7,000.00 to invest in gold coins. Referring to the exact time frame the government contends she gave him money for a hitman, on March 4, 2019 Ms. Cincinelli wrote (block 8638) "Over a week since you borrowed the $". Ms. Cincinelli continues asking where her money is (Blocks 8636-8612). Dirubba's response is "Because I'm making all the moves to make more money don't you understand" (Block 8631). He said, as we have claimed, that he was using the money to make more money. It is our position that the government will fail in its attempt to prove the indispensable element of "pecuniary value" for the commission of a §1958 offense.

With respect to the divorce settlement, as was discussed at the hearing, we were informed that a settlement was reached and, at the court's direction, we secured and provided a copy of the settlement for Your Honor's review. While Ms. Cincinelli may not have been thrilled that after a three-year tumultuous relationship she had to forfeit a part of her pension, she had agreed to do so. In follow-up conversations with counsel, I am informed that after the settlement agreement had been drafted and agreed to, the parties engaged a firm as provided for in the settlement agreement to determine Mr. Carvalho's portion given the length of the marriage and Ms. Cincinelli's length of employment and resultant contributions. This was completed. Many individuals involved in divorce proceedings ask the same questions as those posited in the searches provided by the government. Ms. Cincinelli had agreed in the divorce to give Mr. Carvalho a portion of her home value which would have accrued far earlier than her pension and she stood to gain in child support. Her pension would not have been distributed for years. Again, while the divorce was contested and the relationship had been difficult, a settlement was in place and we are informed ready for signature.

---

[3] These comments are in stark contrast to Dirubba's statement on the May 17, 2019 tape when he performs for his law enforcement audience and states "I'm trying guys I'm trying. Really really hard. Three years of my life, destroyed. Here we go. (Sigh) Just don't believe this girl, my own child" (May 17, 2019, 38:42).

We recognize that much of this will be litigated at trial. And yet, as the government has made this submission in support of a finding of danger and to demonstrate the purported strength of its case, we submit this response to counter these assertions. While the true intent behind the words upon which this case is predicated will be borne out later, we submit that on the issue of pre-trial detention, any concerns as to danger can be ameliorated by the conditions proposed and upon the court's review of the psychological evaluation to be conducted in short order.

Thank you for your courtesy and consideration.

Respectfully Submitted,

_____/s/_____

James Kousouros, Esq.

C.C.

Lara Treinis Gatz,
Catherine M. Mirabile,
*Assistant United States Attorneys*